**99.8112**

**HURRICANE EXPRESS,**

     **Plaintiff,**

**Vs.**

                              **NO.: 3:26-cv-0301**

**BIG RIG NATION, PATRICK
NICHOLSON and RITA
NICHOLSON,**

     **Defendants.**

---

## RESPONSE IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

---

COMES NOW Defendants Big Rig Nation, Patrick Nicholson, and Rita Nicholson ("Defendants"), by their attorneys, in response to Plaintiff Hurricane Express' Motion for Temporary Restraining Order, state as follows:

By filing this response to Plaintiff's motion, Defendants do not waive, and expressly preserve, any and all defenses, including but not limited to lack of personal jurisdiction, improper venue, and insufficiency of process, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

### BACKGROUND FACTS

Plaintiff Hurricane Express ("Plaintiff" or "Hurricane Express") filed its Verified Complaint in this Court on Friday, March 13, 2026. The Verified Complaint alleges common law claims of defamation and tortious inference of a business relationship against Defendants. *See generally* Verified Compl.

Big Rig Nation is an online media and communications platform focused on trucking-industry education and information. (Decl. of Patrick Nicholson ¶2.) The platform

1

operates entirely online. Its principal creator, Patrick Nicholson, works from Vilnius, Lithuania, and divides time between Lithuania and North Carolina. (*Id*. ¶4.) It is not a trucking company and does not own equipment, operate freight services, or employ drivers. (*Id*. ¶9.)

Drivers typically contact Big Rig Nation through its social media channels to discuss industry-related issues, including compensation structures, employment arrangements, and lease-purchase programs. (*Id*. ¶12.) Drivers often voluntarily provide pay statements or other documents for purposes of review and explanation as part of the platform's educational content. (*Id*.)

Additionally, Big Rig Nation posts employment opportunities on its platform. (*Id*. ¶13.) These opportunities are offered by independent trucking companies.(*Id*. ¶14.) Big Rig Nation does not staff, manage, or employ drivers for these positions and serves only as a conduit connecting drivers with external companies. (*Id*. ¶¶12-16.)

When drivers inquire about employment opportunities, Big Rig Nation provides general information about the companies that are hiring.(*Id*. ¶13.) If a driver pursues an opportunity, all hiring decisions, including background checks, qualification verification, and onboarding, are conducted solely by the trucking company.(*Id*. ¶16.) Big Rig Nation does not participate in the hiring process.

Plaintiff's claims that starting on September 25, 2025, Big Rig Nation "began targeting Hurricane Express with false attacks" to interfere with Hurricane Express's relationships with drivers it was recruiting. (Verified Compl. ¶¶ 13-22.) Plaintiff further alleges Defendants launched a "steady campaign" to mislead potential Hurricane Express drivers and entice them away from operating vehicles for Hurricane Express. (*Id*. at ¶11.) Plaintiff specifically points to three (3) social media posts made by Defendants. (*Id*. at¶¶ 14-16.)

Defendants do not dispute that they made the complained-about posts. However, Defendants dispute the assertions that the statements are defamatory and were made to tortiously interfere with Hurricane Express's business relationships. (Decl. of Patrick Nicholson ¶25.) Several drivers independently contacted Defendants to report their experiences with Hurricane Express's lease-purchase program and voluntarily provided both written statements and supporting documentation. (*Id*. ¶20.)   It was only then that Defendants posted the complained -of statements to educate the public.

Moreover, Big Rig Nation derives no financial benefit from any adverse outcomes experienced by Hurricane Express. (*Id*. ¶¶20, 28.) It is true that Big Rig Nation's revenue is derived from referral-related compensation associated with recruiting-related content or social media promotion. (*Id*. ¶11.)  However, the carriers that partner with Big Rig Nation predominantly recruit experienced open deck drivers and generally require a minimum of two (2) years of open deck experience. (*Id*. ¶17.) Hurricane Express primarily hauls refrigerated freight; thus, its drivers would lack the requisite open-deck background and therefore would not qualify for the opportunities offered by companies that work with Big Rig Nation. (*Id*. ¶18.)

Furthermore, Plaintiff fails to identify any specific business relationships that have been tortiously interfered with. (*See generally* Verified Compl.) Nowhere in the Verified Complaint does Plaintiff point to particular contracts, prospective business opportunities, or identifiable relationships with third parties that have been disrupted as a result of the Defendants' alleged actions. Plaintiff only provides general and speculative assertions.

Put simply, Hurricane Express presents no facts that Big Rig Nation defamed Plaintiff or tortiously interfered with its business relationships. On the other hand, though, if the temporary restraining order were granted, Defendants would be irreparably harmed and have their First

3

Amendment rights violated. As discussed in greater detail below, Hurricane Express' Motion should be denied.

## ARGUMENT

### I.     EMERGENCY INJUNCTIVE RELIEF IS NOT APPROPRIATE HERE

To obtain a TRO, Hurricane Express must demonstrate that (1) it has a strong likelihood of success on the merits; (2) Hurricane Express would suffer irreparable injury absent the injunction; (3) the injunction would not cause substantial harm to others; and (4) that public interest would be served by the issuance of an injunction. *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). However, "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Summer Cnty. Schools*, 942 F.3d 324, 326-27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Hurricane Express has not carried its burden.

### II.     A TEMPORARY RESTRAINING ORDER IS NOT IN THE PUBLIC INTEREST AND WILL CAUSE DEFENDANTS IRREPARABLE HARM

First, an injunction would run directly counter to the public interest. Defendants assume Plaintiff seeks injunctive relief to prevent the Defendants from posting on social media, arguing that such posts have harmed, and will continue to harm, the Plaintiff's business interests and reputation. Such interests cannot override Defendants' First Amendment rights.

The 6th Circuit has recognized "when First Amendment rights are implicated, the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights."

*County Sec. Agency v. Ohio DOC*, 296 F.3d 477, 485 (6th Cir. 2002). The Sixth Circuit has noted that, in general, when a district court issues a TRO, it is to "review factors such as the party's likelihood of success on the merits and the threat of irreparable injury," but "in the case of a prior restraint on pure speech, the hurdle is substantially higher: publication must threaten an interest more fundamental than the First Amendment itself." Here, Hurricane Express does not allege that any of its constitutional rights are or will be harmed or that a critical government interest is threatened. *See* ( Doc. Cmplt and Motion). Plaintiff has provided no interest that warrants more fundamental protection than Defendants' First Amendment right.

Moreover, the Supreme Court has determined that an individual's interest in avoiding public criticism of their business practices does not justify the use of a court's injunctive authority. *See Org. for a Better Austin v. Keefe*,402 U.S. 415, 419-20 (1971). Prior restraints on speech may be justified, if at all, only in the most exceptional circumstances, such as to prevent revealing troop movements in wartime, *Near v. Minnesota*, 283 U.S. 697, 716 (1931), or to suppress "information that would set in motion a nuclear holocaust." *N.Y. Times Co. v. United States*, 403 U.S. 713, 726 (1971) (Brennan, J., concurring). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The public interest, therefore, weighs strongly in Defendants' favor and against an injunction. Thus, Plaintiff's Motion for TRO is not in the public interest and will cause irreparable harm to Defendants' constitutional rights and should be denied.

III.     <u>**PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS**</u>

a.   **Plaintiff Cannot Establish Its Defamation Claims**

To establish a defamation claim under Tennessee law, Hurricane Express must demonstrate that Defendants published a false and defamatory statement with knowledge of the statement's

falsity, reckless disregard for the statement's truth, or negligence in failing to ascertain the statement's truth. *Mucerino v. Martin*, No. 3:21-cv-00284, 2021 U.S. Dist. LEXIS 228340, at *19 (M.D. Tenn. Nov. 30, 2021).

i. <u>Defendant Did Not Act with Malice</u>

To prove actual malice, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication, and that publishing, with such doubt, shows reckless disregard for the truth or falsity and demonstrates actual malice. It is the plaintiff's burden to prove actual malice. *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968); *Moore v. Bailey,* 628 S.W.2d 431 (Tenn. App. 1981).

Here, the Defendants' social media platform is primarily to educate and inform current and potential drivers about the trucking industry. A significant part of Defendants' content involves reviewing and discussing driver pay statements and other documentation that drivers voluntarily share with Defendants to explain how different compensation structures and lease-purchase programs operate in practice. Defendants made the complained-of statements after multiple drivers voluntarily contacted Defendants to share their experiences with lease-purchase arrangements at Hurricane Express. These drivers provided both statements and documentation. Defendants believed the information provided to them was legitimate and truthful. Defendants in no way acted maliciously at the time they made their social media posts. Thus, Plaintiff cannot establish a defamation claim.

ii. <u>Defendants' Social Media Posts Were Non-Defamatory as a Matter of Law</u>

Defendants' social media posts were non-defamatory as a matter of law. "A published statement is not libelous because the subject of the publication finds it annoying, offensive, or

6

embarrassing. Rather, the statement must reasonably be construable as holding the plaintiff up to public hatred, contempt, or ridicule[] and convey an element of disgrace." *Grant v. Commercial Appeal*, No. W2015-00208-COA-R3-CV, 2015 Tenn. App. LEXIS 750, 2015 WL 5772524, at *9 (Tenn. Ct. App. Sept. 18, 2015) (quoting *Aegis Scis. Corp. v. Zelenik*, No. M2012-00898-COA-R3CV, 2013 Tenn. App. LEXIS 30, 2013 WL 175807, at *5 (Tenn. Ct. App. Jan. 16, 2013)). A negative statement about another person, moreover, is not defamatory merely because it was made from "personal ill will, hatred, spite, or [a] desire to injure." *Hibdon v. Grabowski*, 195 S.W.3d 48, 63 (Tenn. Ct. App. 2005) (quoting *McWhorter v. Barre*, 132 S.W.3d 354, 365 (Tenn. Ct. App. 2003)). It is, therefore, not enough merely for Hurricane Express to assert that the Defendants' social media posts were intended to portray Hurricane Express negatively. Thus, Defendants' social media posts were non-defamatory, and Plaintiff cannot establish a defamation claim.

### b.  Plaintiff Has Not and Cannot Set Forth Its Tortious Interference Claim

In order to prevail on this claim, Hurricane Express must establish: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) Defendant's knowledge of that relationship and not a mere awareness of Hurricane Express' business dealings with others in general; (3) Defendants' intent to cause the breach or termination of the business relationship; (4) Defendants' improper motive or improper means; and finally, (5) damages resulting from Defendants' tortious interference. *Trau-Med of Am., Inc. v. Allstate Ins. Co*., 71 S.W.3d 691, 701 (Tenn. 2002).

The fourth element, improper motive or improper means, is critical and requires a nuanced analysis. Tennessee courts have clarified that an improper motive exists when the defendant's predominant purpose is to injure the plaintiff. This determination is fact-specific and depends on

7

the circumstances of the case. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

As stated above, Defendants' primary motive was to educate and inform current and potential drivers about the trucking industry. Defendants only made the complained-of statements after multiple drivers voluntarily contacted Defendants to share their experiences with lease-purchase arrangements at Hurricane Express. These drivers provided both statements and documentation. Defendants believed the information provided to them was legitimate and truthful. Defendants in no way acted with an improper motive. Thus, Hurricane Express cannot establish a tortious interference claim.

## IV. HURRICANE EXPRESS HAS SUFFERED NO DAMAGES AND IS NOT AT RISK OF SUFFERING IRREPARABLE HARM

In evaluating the harm which will occur both if the stay is issued and if it is not, we look to three factors: (1) the substantiality of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof provided. *Ohio ex rel. Celebrezze v. Nuclear Regulatory Com.*, 812 F.2d 288, 290 (6th Cir. 1987). Economic loss does not constitute irreparable harm, in and of itself. *Id*. Economic loss is generally recoverable, while injunctive relief is available only when legal remedies prove inadequate. *Id*. In addition, the harm alleged must be both certain and great, rather than speculative or theoretical. *Id*.

Even assuming *arguendo*, but incorrectly, Plaintiff is ultimately successful in proving its defamation and tortious inference claims, it has an adequate remedy at law as it could calculate damages based on any loss of business that it could attribute to the Defendants' alleged conduct, which would fully compensate it for any alleged wrongdoing. *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868 (2025) (The Sixth Circuit reiterated that lost profits or other monetary losses

8

are "quintessentially reparable by money damages" and do not meet the threshold for irreparable harm.). Here, Hurricane Express, if its assertions are proven correct, should know exactly which former, current, or potential drivers are allegedly being tortiously targeted by Defendants. Thus, alleged damages would be easily calculable, and the disgorgement of profits would adequately compensate Hurricane Express for any tortious conduct it could prove. Hurricane Express has an adequate remedy of law, has suffered no irreparable harm, and its motion should be denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order denying Hurricane Express' motion, and granting such other relief to Defendants as is just and appropriate.

Dated March 16, 2026.

Respectfully submitted,

*/s/ Paige M. Lyle*
Paige M. Lyle (TN 032959)
FORDHARRISON LLP
150 Third Ave South, Suite 2010
Nashville, Tennessee 37201
Telephone: (615) 574-6700
Facsimile: (615) 574-6701
plyle@fordharrison.com

*Counsel for Defendant*

9

## <u>CERTIFICATE OF SERVICE</u>

The Undersigned hereby certifies that on March 16, 2026, I presented the foregoing pleading to the Clerk of the Court for filing and uploading to the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Nicholas E. Bragorgos
McNabb, Bragorgos, Burgess,
Sorin, PLLC
81 Monroe, Sixth Floor
Memphis, TN 38103
Telephone: (901-624-0640
Facsimile: (901) 624-0650
nbragorgos@mbbslaw.com

*Attorney for Plaintiff*

/s/ Paige M. Lyle
Paige M. Lyle

10