HURRICANE EXPRESS,

   Plaintiff,

vs.                                                                  NO.  3:26-cv-0301

BIG RIG NATION, PATRICK
NICHOLSON and RITA NICHOLSON,

   Defendants.

---

## AMENDED COMPLAINT

---

1.       Plaintiff, Hurricane Express, files this Amended Complaint in the United States District Court for the Middle District of Tennessee pursuant to U.S. Code §1332 on the basis of diversity of citizenship and the amount in controversy exceeds $75,000.00.

2.       Defendant Big Rig Nation, upon information and belief, is an entity believed to be doing business in Nashville, Tennessee.

3.       Defendant Rita Nicholson, upon information and belief, is an adult resident of the State of North Carolina residing in Silva, North Carolina.  Rita Nicholson is, upon information and belief, the President and Director of Big Rig Nation.

4.       Defendant Patrick Nicolson, upon information and belief, is an adult resident of the State of North Carolina residing in Silva, North Carolina.  Patrick Nicholson is believed to be the Founder of Big Rig Nation.

5.     Plaintiff Hurricane Express is a corporation authorized to do business in the State of Tennessee and is licensed and incorporated in the State of Oklahoma. Hurricane Express' principal place of business is located in Colcord, Oklahoma.

## FACTS

6.     Plaintiff Hurricane Express is an over the road trucking operation operating throughout the southeast United States and other areas of the country.

7.     Plaintiff Hurricane Express has hired over 250 drivers from the State of Tennessee.

8.     Drivers of Plaintiff Hurricane Express logged more than 2,000,000 miles in Tennessee in 2025.

9.     In 2025, Plaintiff's drivers brought 275 loads into the State of Tennessee and shipped 376 loads out of the State of Tennessee.

10.     Defendant Big Rig Nation is an entity operating in and around Nashville, Tennessee with a website and social media platforms identifying its location of business as Nashville, Tennessee.

11.     Defendant Patrick Nicholson is the founder of Big Rig Nation.

12.     Defendant Rita Nicholson is the President and Director of Big Rig Nation.

13.     Prior to renaming itself as Big Rig Nation in January 2025, Defendant Big Rig Nation was named Your Transportation Experts.

14.     The phone number on the Your Transportation Experts Facebook page (629-206-6609) is the same phone number as the present phone number on the Big Rig Nation website.

15.     Previously, Defendant Patrick Nicholson was the owner and Chief of Operations for Your Transportation Experts and Modestas Masiulionias was the Chief Executive Officer for Your Transportation Experts.

16.     In social media posts, Your Transportation Experts identified numerous trucking carriers that partnered with Your Transportation Experts to hire drivers.

17.     In  March 2022, Your Transportation Experts (prior to begin renamed Big Rig Nation) claimed that it has hired 250+ drivers in the past 16 months and thanked  all of its partner carriers for putting trust into Your Transportation Experts to help those carriers  hire drivers.

18.     On a Your Transportation Experts (prior to changing its name to Big Rig Nation) Facebook post, Defendant Patrick Nicholson posted a video with the following information.  "If you're looking for a GREAT OTR job, with one of our screened out, qualified and ethical carriers clink the link below, fill out the application and you'll be on your way."

19.     On a "Your Transportation Experts'" (prior to changing its name to Big Rig Nation) Facebook post, Defendant Patrick Nicholson states that if a driver is "looking for a trucking company that values you and sets up with reputable and ethical carriers, clink on the link below and you'll be on your way."

20.     On a "Your Transportation Experts'" (prior to changing its name to Big Rig Nation) Facebook post, Patrick Nicholson is quoted as stating that he is looking for "thoughtful

3

communication with all partners in order to expand their fleet and to make their drivers lives better."

21.     As President of Your Transportation Experts (prior to changing its name to Big Rig Nation), Patrick Nicholson told drivers via social media to contact him to land high-paying trucking jobs.

22.     On a social media post, Modestas Mas, the business partner of Defendant Patrick Nicholson at Your Transportation Experts (prior to renaming itself as Big Rig Nation) states that Your Transportation Experts "are looking for qualified trucking companies looking to get more CDL-A drivers."

23.     The Facebook page for Your Transportation Experts states that it is "closed go to Big Rig Nation".

24.     In January 2025, according to a social media post, Your Transportation Experts renamed itself as Big Rig Nation.

25.     In a 2025 Facebook post, Your Transportation Experts advertised that "Your Transportation Experts has a new look and is called BIG RIG NATION.  C'mon and join us."

26.     The contact information on the Your Transportation Experts Facebook page as of the filing of this Amended Complaint provides an email address of rita@bigrigNation.com which is the same email address as presently provided on the Big Rig Nation website and Facebook page.

27. On its website, Your Transportation Experts (prior to changing its name to Big Rig Nation) states that drivers should go to the Big Rig Nation website if "looking for the highest paying OTR CDL-A?  Go to www.bigrigNation.com."

28. Defendant Big Rig Nation maintains and controls a Facebook page with 32,000 Facebook followers.

29. Defendant Big Rig Nation also maintains and controls a YouTube page with over 5,000 subscribers.

30. On the Big Rig Nation YouTube page, as of March 27, 2026, Big Rig Nation claims to have received over 529,625 views.

31. Defendant Big Rig Nation also maintains a LinkedIn page which identifies Big Rig Nation as a "Staffing and Recruiting" company located in Nashville, Tennessee.

32. On Defendant Big Rig Nation's Facebook page, Big Rig Nation has posted that it "is in Nashville, Tennessee".

33. On Defendant's Big Rig Nation's Facebook page, as of the filing of this Amended Complaint, the only "check-ins" made by Defendants are in Nashville, Tennessee.

34. On Defendant's Big Rig Nation's Facebook page ("Big Rig Nation"), Defendant Big Rig Nation provides drivers with a Nashville, Tennessee phone number (629-206-6609).

35. On the "Contact Us" page of Defendant Big Rig Nation's website, Big Rig Nation provides a Nashville, Tennessee phone number (629-220-6609) as well as office hours from 9:00 a.m. to 6:00 p.m. Central Standard Time.

5

36. On the "Information" page of Defendant Big Rig Nation's website, Defendant Big Rig Nation indicates that drivers should contact either "Rita or Patrick" at "629-206-6609 USA".

37. A Google search for the name "Big Rig Nation" identifies Big Rig Nation as having "truck driving jobs/Big Rig Nation/Nashville, TN".

38. A Google search of "Big Rig Nation" shows that the "Contact Us" identifies "Patrick Nicholson, Founder of Big Rig Nation, Address: Nashville …"

39. On its website, Big Rig Nation provides prospective drivers with a Nashville, TN telephone number (629-206-6609).

40. On its website, Big Rig Nation, under "Messaging Policy" states that if drivers wanted to receive text messages, they should "text START to this phone number 629-229-2042," a separate Nashville, TN phone number.

41. As of the filing of this Amended Complaint, on its website, Defendant Big Rig Nation claims to have hired 1189 drivers.

42. On its website, Defendants provide carriers with a "Carrier Form" to fill out to obtain new drivers through Big Rig Nation, stating "Need Drivers? …Simply, Fill Out This Form Below & We Will Get In Touch With You."

43. On its website, Big Rig Nation has a section entitled "Carrier Forum" which states "need drivers? Fill this form." and provides a questionnaire for prospective trucking employers to fill out and states at the link "let's get you those drivers!"

6

44. On Defendant Big Rig Nation's website, under the "Driving Positions" dropdown, Big Rig Nation states that "your journey starts here – find the perfect fit for you."

45. Defendants continue to recruit drivers for various trucking companies. On its website, as of the filing of this Amended Complaint, under "Driving Positions", Defendants are advertising for multiple driver positions with an "Apply Now" link.

46. Defendants receive income and money from each driver that Defendants place with these other trucking companies.

47. In the sworn "Declaration of Patrick Nicholson" (ECF Doc. No. 9-1), Defendant Patrick Nicholson admits that Defendants receive income from referring truck drivers to other carriers for hire.

48. On March 4, 2026, Defendants advertised on social media for 2 new driver recruiters to provide "opportunities in this industry".

49. On its website, Big Rig Nation states that it connects "experienced drivers with companies that value professionalism and fair treatment…"

50. On its website, Big Rig Nation states that it removes layers of truck driver recruiting and "we help companies find professionals who understand the industry and want long term opportunities on the road."

51. On its website, under "Driving Positions", Big Rig Nation has a testimonial from a driver stating that "Big Rig Nation helped me get a very high paying job with a great company!"

7

52. On the Big Rig Nation website, another testimonial from a driver stated that "when I got on the phone with Big Rig Nation, they really did give me a high paying CDL – a JOB that made me say WOW…"

53. On the Big Rig Nation website, another testimonial from a driver named "Buck M." states that Big Rig Nation "got me a job that actually delivered on EVERYTHING they promised on. When the team at Big Rig Nation said they only work with carriers who do business the right way, they were not lying."

54. Beginning in approximately September of 2025, Big Rig Nation began targeting Plaintiff on multiple social media platforms with false and defamatory attacks in an intentional effort to interfere with the business relationships between Plaintiff and its drivers and between Plaintiff and prospective drivers that Defendants are actively recruiting.

55. Beginning in approximately September of 2025, Big Rig Nation intentionally began a continuous and systematic campaign of false and defamatory social media posts about Plaintiff publicly available to Plaintiff's drivers and potential drivers in order to damage Plaintiff's relationship with Plaintiff's drivers and to entice drivers away from operating vehicles on behalf of Plaintiff.

56. As a result of Defendants' intentional efforts to disparage and defame Plaintiff and discourage drivers from driving for Plaintiff beginning in approximately September 2025, Plaintiff has suffered financial and reputational damage and continues to suffer same.

57.     As a result of Defendants' intentional efforts to disparage and defame Plaintiff beginning in approximately September 2025, Plaintiff has been damaged by a net loss of drivers, difficulty hiring new drivers, missed linehaul revenues and missed lease revenues.

58.     Numerous social media and/or website posts made by Defendants in 2025 and 2026 which specifically target Plaintiff and intentionally disparage, defame and place Plaintiff in a false light, including, but not limited to, accusing Plaintiff of legalized theft, wage theft, criminal activity, encouraging its drivers to engage in criminal activity and to break federal law, improper settlements with Plaintiff's drivers, etc. are attached as Exhibits to the sworn Declaration of Kaedon Steinert.

59.     The Exhibits to the sworn Declaration of Kaedon Steinert illustrate how Defendants continuously, systematically, intentionally and falsely target the Plaintiff in an effort to simultaneously cause reputational and financial harm to Plaintiff, to damage plaintiff's business relationship with its drivers and with prospective drivers, as well as to financially reward Defendants by causing drivers to either leave employment with Plaintiff or refuse prospective employment with Plaintiff based upon Defendants' intentional and false social media posts and instead go to work for trucking companies that partnered with Defendants resulting in Defendants' financial gain.

60.     Plaintiff would show to the Court that Defendants are aware of the individuals that Hurricane Express attempts to hire and deliberately goes after that group of individuals in order to harm Hurricane Express and for Defendants to profit by doing so.

9

61.     Plaintiff would show to the Court that the actions of Defendants are intentional, reckless, willful, knowing, on-going and designed to disrupt the Plaintiff's efforts to hire additional and new drivers for their trucking operation.

62.     Defendants have accused Plaintiff on social media of engaging in criminal activities and violating federal law.

63.     Defendants have accused Plaintiff on social media of encouraging its drivers to engage in criminal activities and to violate federal law.

64.     Defendants have accused Plaintiff on social media of "wage theft".

65.     Defendants have accused Plaintiff on social media of manipulating driver settlement statements.

66.     Defendants have accused Plaintiff on social media of not being honest with its drivers regarding driver settlement statements.

67.     Manipulating or falsification of driver records is a federal crime pursuant to 49 C.F.R. §390.35.

68.     Falsification of driver records can lead to federal or criminal charges, including 18 U.S.C. §1001.

69.     Any attempt of a carrier to threaten a driver with loss of work to force coercion or manipulation of driver statements or records may be a federal crime pursuant to 49 C.F.R. §390-6.

10

70. Any attempts by a carrier to engage in wage theft or manipulation of driver records or statements could be considered a violation of the "prohibiting coercion of commercial motor vehicle drivers (coercion rule) adopted by the Federal Motor Carrier Safety Administration (FMCSA) which prohibits motor carriers from coercing drivers to operate in violation of certain FMCSA regulations and authorizes the FMCSA to issue penalties against any motor carrier deemed to have coerced drivers. (49 C.F.R. parts 386 and 390).

71. Defendants advertise on social media for new drivers claiming that there are "no games with paychecks" with drivers hired through Big Rig Nation.

72. Defendants have accused Plaintiff on social media of using the law of the State of Oklahoma to "trap drivers legally."

73. Defendants have alleged on social media that Plaintiff was one of 7 trucking companies whose practices result in truck drivers "being robbed …" In a subsequent social media post, Defendants state that this Facebook post accusing Plaintiff of robbing truck drivers had 130,000 impressions, 14,500 views and 880 watch hours.

74. Defendants have accused Plaintiff in social media of making false promises to prospective drivers.

75. Defendants have accused Plaintiff on social media of driver misclassification.

76. Defendants on social media have accused Plaintiff of abusing its drivers.

77. Defendants have accused Plaintiff on social media of skimming off the top from its drivers and attempting to hide the real rate from its drivers.

11

78. Defendants have claimed on social media that there is "THE HURRICANE TRAP."

79. Defendants have accused Plaintiff on social media of improperly settling with its drivers, including using improper settlement deductions.

80. Defendants have accused Plaintiff on social media of tricking drivers with fake lease-purchase ownership.

81. Defendants have accused Plaintiff on social media of "lying to drivers" about lease programs.

82. Defendants have stated on social media that it does not offer leases because Big Rig Nation are not "crooks".

83. Defendants have accused Plaintiff on social media of providing missing rate confirmations to drivers.

84. Defendants have accused Plaintiff on social media of engaging in fuel surcharge games with its drivers.

85. Defendants have accused Plaintiff on social media of disguising long-term leases as rentals for drivers.

86. Defendants have accused Plaintiff on social media of having lease programs designed to be a trap for its drivers.

12

87. Defendants have accused Plaintiff on social media of having drivers pay hundreds of thousands for trucks the drivers will never own.

88. Defendants have accused Plaintiff on social media of engaging in "legalized theft" from its drivers.

89. Defendants have accused Plaintiff on social media of using Oklahoma law to trap drivers legally.

90. Defendants have accused Plaintiff on social media of being untruthful and that Defendants would "expose the truth" behind Plaintiff's finances.

91. Defendants have accused Plaintiff on social media of applying company pressure to its drivers.

92. Defendants have accused Plaintiff on social media of leaving a driver broke as a result of cheap freight, adjusted rates and pennies for pay.

93. Defendants on social media have accused Plaintiff of improperly threatening a driver with abandonment.

94. Defendants on social media have accused Plaintiff of making broken promises to Plaintiff's drivers, of its drivers having missing pay because of Plaintiff, and Plaintiff's drivers being turned upside down by Plaintiff.

95. Defendant Patrick Nicholson on social media has said he does not recommend drivers work for Plaintiff.

13

96. Defendant Patrick Nicholson on social media has said that drivers deserve better than false promises allegedly made by Plaintiff to its drivers and prospective drivers.

97. Defendants on social media have accused Plaintiff of requiring drivers to work long hours, providing drivers with confusing statements, and pressuring drivers with misleading lease purchase programs.

98. Defendant Patrick Nicholson on social media has said that his accusations about Plaintiff are not merely his opinions, but are a matter of record.

99. Defendant Patrick Nicholson on social media has accused Plaintiff of having poor leadership which negatively affects drivers.

100. Since Defendants began their social media campaign against Plaintiff in September 2025, Plaintiff asserts that Plaintiff has 46 less drivers working with Plaintiff than Plaintiff would have employed without Defendants' social media attacks against Plaintiff.

101. Those 46 missing drivers would have averaged approximately 2,100 loaded miles per week resulting in a total loss of approximately 96,600 loaded miles/per week. Based upon quantifiable, expected revenue received by Plaintiff per loaded mile driven, which was not driven due to a lack of available drivers due to Defendants' social media attacks against Plaintiff, Plaintiff has already sustained damages believed to be in excess of $1,000,000 and which continue to grow daily.

14

102. Additionally, as a result of Defendants' social media attacks against Plaintiff, Plaintiff has suffered a quantifiable loss in lease revenues from those missing drivers not working with Plaintiff as a result of Defendants' social media attacks against Plaintiff.

103. Based upon quantifiable lease revenues received by Plaintiff per week per driver, Plaintiff has already sustained damages from loss of lease revenues believed to be in excess of $600,000 and which continue to grow daily.

## COUNT I – DEFAMATION

104. Plaintiff incorporates by reference verbatim all proceeding paragraphs in support of Count I of the Amended Complaint.

105. Plaintiff would show to the Court that the Defendants are liable for defamation.

106. Defendants have accused Plaintiff of engaging in criminal activities and violation of federal law.

107. Defendants have accused Plaintiff of encouraging its drivers to engage in criminal activities and violation of federal law.

108. Defendants have accused Plaintiff of skimming off the top from its drivers and attempting to hide the real rates from its drivers.

109. Defendants have claimed on social media that there is "THE HURRICANE TRAP."

110. Defendants have accused Plaintiff on social media of improperly settling with its drivers.

15

111. Defendants have accused Plaintiff on social media of improperly manipulating driver statements.

112. Defendants have accused Plaintiff of promoting and pressuring drivers into fake lease-purchase ownership to drivers.

113. Defendants have accused Plaintiff on social media of providing missing rate confirmations to its drivers.

114. Defendants have accused Plaintiff on social media of engaging in "fuel surcharge games" with its drivers.

115. Defendants have accused Plaintiff on social media of disguising long-term leases as rentals.

116. Defendants have accused Plaintiff on social media of improperly having drivers pay hundreds of thousands for trucks they'll never own.

117. Defendants have accused Plaintiff on social media of using Oklahoma law to trap drivers legally.

118. Defendants have accused Plaintiff on social media of being untruthful with and lying to its drivers.

119. Defendants have called Plaintiff's lease programs a trap for drivers.

120. Defendants have accused Plaintiff on social media of taking improper settlement deductions from its drivers.

16

121. Defendants have accused Plaintiff on social media of applying company pressure to its drivers.

122. Defendants have accused Plaintiff on social media of leaving a driver "broke" as a result of "[c]heap freight, adjusted rates and pennies for pay…."

123. Defendants have accused Plaintiff on social media of improperly threatening one of its drivers "with abandonment."

124. Defendants have accused Plaintiff on social media of "wage theft".

125. Defendants have accused Plaintiff on social media of not being honest with its drivers regarding driver settlement statements.

126. Defendants have alleged on social media that Plaintiff was one of 7 trucking companies whose practices result in truck drivers "being robbed …" In a subsequent social media post, Defendants state that this Facebook post accusing Plaintiff of robbing truck drivers had 130,000 impressions, 14,500 views and 880 watch hours.

127. Defendants have accused Plaintiff in social media of making false promises to prospective drivers.

128. Defendants have accused Plaintiff on social media of driver misclassification.

129. Defendants on social media have accused Plaintiff of abusing its drivers.

130. Defendants have accused Plaintiff on social media of "lying to drivers" about lease programs.

17

131. Defendants have stated on social media that it does not offer leases because Big Rig Nation are not "crooks".

132. Defendants have accused Plaintiff on social media of providing missing rate confirmations to drivers.

133. Defendants have accused Plaintiff on social media of having lease programs designed to be a trap for its drivers.

134. Defendants have accused Plaintiff on social media of having drivers pay hundreds of thousands for trucks the drivers will never own.

135. Defendants have accused Plaintiff on social media of engaging in "legalized theft" with its drivers.

136. Defendants have accused Plaintiff on social media of leaving a driver broke as a result of cheap freight, adjusted rates and pennies for pay.

137. Defendants on social media have accused Plaintiff of making broken promises to Plaintiff's drivers, of its drivers having missing pay because of Plaintiff, and Plaintiff's drivers being turned upside down by Plaintiff.

138. Plaintiff would show that the on-going defamation being perpetuated by Defendants has had and continues to have a negative reputational and financial impact on Plaintiff.

139. Plaintiff would show that based upon the defamatory actions of the Defendants, that Plaintiff has suffered reputational and financial damages, and is entitled to monetary

18

compensation to remedy same. Plaintiff would show to the Court that the defamatory actions by Defendants are on-going and continues to cause Plaintiff's damages to increase on a regular basis.

140. The defamatory statements of Defendants, both past and present, are having a chilling effect on the ability to hire drivers. This continues to cause Plaintiff financial hardship and is an ongoing threat to daily operations.

141. Plaintiff's past and continuing damages as a result of Defendants' defamatory statements including Plaintiff's net loss of drivers, Plaintiff's loss of linehaul revenues, Plaintiff's loss of lease revenues and Plaintiff's reputational damage since Defendants began the social media attacks against Plaintiff in approximately September 2025

142. Plaintiff has been and continues to be damaged by Defendants' defamation and seeks injunctive relief, compensatory damages and punitive damages from Defendants.

## COUNT II – VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

143. Plaintiff incorporates by reference verbatim all preceding paragraphs in support of Count II.

144. Plaintiff would show to the Court that the actions of the Defendants are in violation of Tennessee Code Annotated §47-18-101 *se seq.*, the Tennessee Consumer Protection Act.

145. Plaintiff would show that Defendants' actions encompassed unfair and/or deceptive acts and/or practices which have affected the conduct of trade or commerce involving Plaintiff.

146. In this litigation, Defendant Patrick Nicholson has provided a sworn "Declaration of Patrick Nicholson" under penalty of perjury (ECF Doc. No 9-1) declaring under oath that (1)

he works primarily in Lithuania, (2) Big Rig Nation is not incorporated in the United States, (3) Big Rig Nation is not registered to do business in the State of Tennessee, and (4) Big Rig Nation does not maintain a physical business in Tennessee.

147. Defendant Big Rig Nation maintains a Facebook page under the name "Big Rig Nation". In Facebook posts, Big Rig Nation repeatedly identifies that it "is in Nashville, Tennessee".

148. On its Facebook page, Defendant Big Rig Nation provides Tennessee drivers with a Nashville, Tennessee phone number (629-206-6609).

149. On its Facebook page, as of the filing of this Amended Complaint, Big Rig Nation presently only has check-ins from Nashville, Tennessee.

150. Defendant Big Rig Nation also maintains and controls a website - www.bigrignation.com.

151. On the "Contact Us" page of Defendant Big Rig Nation's website (www.bigrignation.com), Big Rig Nation provides a Nashville, Tennessee phone number (629-220-6609) as well as office hours from 9:00 a.m. to 6:00 p.m. Central Standard Time.

152. On the "Information" page of Defendant Big Rig Nation's website (www.bigrignation.com), Defendant Big Rig Nation states that drivers should contact either "Rita or Patrick" at "629-206-6609 USA".

153. On the top of each page of its website (www.bigrignation.com), Big Rig Nation provides prospective drivers with a Nashville, TN telephone number (629-206-6609).

20

154.    On the Big Rig Nation website, under "Messaging Policy", Defendants state that if drivers wanted to receive text messages, drivers should "text START to this phone number 629-229-2042," another Nashville, TN phone number.

155.    Defendant Big Rig Nation has a LinkedIn page ("Big Rig Nation") which identifies Big Rig Nation as a "Staffing and Recruiting" company based in Nashville, Tennessee.

156.    Defendants have accused Plaintiff on social media of engaging in criminal activities.

157.    Defendants have accused Plaintiff on social media of encouraging its drivers to engage in criminal activities and violation of federal law.

158.    Defendants have accused Plaintiff on social media of skimming off the top from its drivers and attempting to hide the real rates from its drivers.

159.    Defendants have claimed on social media that there is "THE HURRICANE TRAP."

160.    Defendants have accused Plaintiff on social media of improperly settling with its drivers.

161.    Defendants have accused Plaintiff on social media of improperly manipulating driver statements.

162.    Defendants have accused Plaintiff of promoting and pressuring drivers into fake lease-purchase ownership to drivers.

21

163. Defendants have accused Plaintiff on social media of providing missing rate confirmations to its drivers.

164. Defendants have accused Plaintiff on social media of engaging in "fuel surcharge games" with its drivers.

165. Defendants have accused Plaintiff on social media of disguising long-term leases as rentals.

166. Defendants have accused Plaintiff on social media of improperly having drivers pay hundreds of thousands for trucks they'll never own.

167. Defendants have accused Plaintiff on social media of using Oklahoma law to trap drivers legally.

168. Defendants have accused Plaintiff on social media of being untruthful with and lying to its drivers.

169. Defendants have called Plaintiff's lease programs a trap for drivers.

170. Defendants have accused Plaintiff on social media of taking improper settlement deductions from its drivers.

171. Defendants have accused Plaintiff on social media of applying company pressure to its drivers.

172. Defendants have accused Plaintiff on social media of leaving a driver "broke" as a result of "[c]heap freight, adjusted rates and pennies for pay…."

22

173. Defendants have accused Plaintiff on social media of improperly threatening one of its drivers "with abandonment."

174. Defendants have accused Plaintiff on social media of "wage theft".

175. Defendants have accused Plaintiff on social media of not being honest with its drivers regarding driver settlement statements.

176. Defendants have alleged on social media that Plaintiff was one of 7 trucking companies whose practices result in truck drivers "being robbed …"

177. Defendants have accused Plaintiff in social media of making false promises to prospective drivers.

178. Defendants have accused Plaintiff on social media of driver misclassification.

179. Defendants on social media have accused Plaintiff of abusing its drivers.

180. Defendants have accused Plaintiff on social media of "lying to drivers" about lease programs.

181. Defendants have stated on social media that it does not offer leases because Big Rig Nation are not "crooks".

182. Defendants have accused Plaintiff on social media of providing missing rate confirmations to drivers.

183. Defendants have accused Plaintiff on social media of having lease programs designed to be a trap for its drivers.

23

184.   Defendants have accused Plaintiff on social media of having drivers pay hundreds of thousands for trucks the drivers will never own.

185.   Defendants have accused Plaintiff on social media of engaging in "legalized theft" with its drivers.

186.   Defendants have accused Plaintiff on social media of leaving a driver broke as a result of cheap freight, adjusted rates and pennies for pay.

187.   Defendants on social media have accused Plaintiff of making broken promises to Plaintiff's drivers, of its drivers having missing pay because of Plaintiff, and Plaintiff's drivers being turned upside down by Plaintiff.

188.   Defendants violated Tennessee Code Annotated §47-18-104(b)(2) on social media, internet searches posts and on the Big Rig Nation website (www.bigrignation.com) by causing the likelihood of confusion or misunderstanding as to the source of  Big Rig Nation's geographic origin of its advertised trucking and hiring services as being Nashville, Tennessee as opposed to Vilnius, Lithuania as sworn to by Defendant Patrick Nicholson in his sworn declaration.

189.   Defendants violated Tennessee Code Annotated §47-18-107(b)(4) by using deceptive representations of Big Rig Nation's geographic origin of its advertised trucking and hiring services as being Nashville, Tennessee as opposed to Vilnius, Lithuania as sworn to by Defendant Patrick Nicholson in his sworn declaration.

190.   Defendants violated Tennessee Code Annotated §4718-104(b)(32)(a) by misrepresenting the geographic location of Defendant Big Rig Nation through its business name

24

and/or listing in a local telephone directory and/or on the internet as being Nashville, Tennessee as opposed to Vilnius, Lithuania as sworn to by Defendant Patrick Nicholson in his sworn declaration.

191.    Defendants violated Tennessee Code Annotated §47-18-104(b)(8) by making false or misleading representations of fact disparaging the services or Plaintiff's trucking business to Plaintiff's drivers and to prospective drivers.

192.    Defendants' social media posts and videos violated Tennessee Code Annotated §4718-104(b)(21) by creating a false impression of the quality of Plaintiff's trucking services offered to its drivers and to prospective drivers.

193.    Defendants' social media posts and videos violated Tennessee Code Annotated §47-18-104(b)(21) by misrepresenting Plaintiff's trucking services to its drivers and to prospective drivers.

194.    Plaintiff would show that Defendants' intentional and untrue accusations throughout various social media platforms accusing Plaintiff of illegal, criminal and unethical activity intentionally disparages the services and business of Plaintiff by making those false and misleading representations of fact regarding the alleged actions of Plaintiff.

195.    Plaintiff has suffered an ascertainable loss of money as a result of the Defendants' unfair or deceptive acts or practices in violation of the Tennessee Consumer Protection Act, including Plaintiff's net loss of drivers, Plaintiff's difficulty hiring new drivers, Plaintiff's loss of linehaul revenues, Plaintiff's loss of lease revenues and Plaintiff's reputational damage since Defendants began the social media attacks against Plaintiff in approximately September 2025.

25

196. Plaintiff has been and continues to be damaged by Defendants' violation of the Tennessee Consumer Protection Act and seeks injunctive relief, compensatory damages and punitive damages from Defendants.

197. Because Defendants' actions have been systematic and continuous over multiple websites and social media platforms, Defendants' unfair and deceptive acts or practices constitute a willful and knowing violation of the Tennessee Consumer Protection Act. Accordingly, Plaintiff is entitled to three times the actual damages sustained as well as other relief considered necessary and proper pursuant to Tennessee Code Annotated §47-18-109(a)(3).

## <u>COUNT III – FALSE LIGHT</u>

198. Plaintiff reincorporates the factual allegations addressed above verbatim in support of Count III.

199. Defendants' social media posts and videos as addressed above have repeatedly placed Plaintiff in a false light which would be highly offensive to any reasonable person.

200. Defendants have accused Plaintiff of engaging in criminal activities.

201. Defendants have accused Plaintiff of encouraging its drivers to engage in criminal activities and violation of federal law.

202. Defendants have accused Plaintiff of skimming off the top from its drivers and attempting to hide the real rates from its drivers.

203. Defendants have claimed on social media that there is "THE HURRICANE TRAP."

26

204. Defendants have accused Plaintiff on social media of improperly settling with its drivers.

205. Defendants have accused Plaintiff on social media of improperly manipulating driver statements.

206. Defendants have accused Plaintiff of promoting and pressuring drivers into fake lease-purchase ownership to drivers.

207. Defendants have accused Plaintiff on social media of providing missing rate confirmations to its drivers.

208. Defendants have accused Plaintiff on social media of engaging in "fuel surcharge games" with its drivers.

209. Defendants have accused Plaintiff on social media of disguising long-term leases as rentals.

210. Defendants have accused Plaintiff on social media of improperly having drivers pay hundreds of thousands for trucks they'll never own.

211. Defendants have accused Plaintiff on social media of using Oklahoma law to trap drivers legally.

212. Defendants have accused Plaintiff on social media of being untruthful with and lying to its drivers.

213. Defendants have called Plaintiff's lease programs a trap for drivers.

27

214. Defendants have accused Plaintiff on social media of taking improper settlement deductions from its drivers.

215. Defendants have accused Plaintiff on social media of applying company pressure to its drivers.

216. Defendants have accused Plaintiff on social media of leaving a driver "broke" as a result of "[c]heap freight, adjusted rates and pennies for pay…."

217. Defendants have accused Plaintiff on social media of improperly threatening one of its drivers "with abandonment."

218. Defendants have accused Plaintiff on social media of "wage theft".

219. Defendants have accused Plaintiff on social media of not being honest with its drivers regarding driver settlement statements.

220. Defendants have alleged on social media that Plaintiff was one of 7 trucking companies whose practices result in truck drivers "being robbed …" In a subsequent social media post, Defendants state that this Facebook post accusing Plaintiff of robbing truck drivers had 130,000 impressions, 14,500 views and 880 watch hours.

221. Defendants have accused Plaintiff in social media of making false promises to prospective drivers.

222. Defendants have accused Plaintiff on social media of driver misclassification.

223. Defendants on social media have accused Plaintiff of abusing its drivers.

28

224. Defendants have accused Plaintiff on social media of "lying to drivers" about lease programs.

225. Defendants have stated on social media that it does not offer leases because Big Rig Nation are not "crooks".

226. Defendants have accused Plaintiff on social media of providing missing rate confirmations to drivers.

227. Defendants have accused Plaintiff on social media of having lease programs designed to be a trap for its drivers.

228. Defendants have accused Plaintiff on social media of having drivers pay hundreds of thousands for trucks the drivers will never own.

229. Defendants have accused Plaintiff on social media of engaging in "legalized theft" with its drivers.

230. Defendants have accused Plaintiff on social media of leaving a driver broke as a result of cheap freight, adjusted rates and pennies for pay.

231. Defendants on social media have accused Plaintiff of making broken promises to Plaintiff's drivers, of its drivers having missing pay because of Plaintiff, and Plaintiff's drivers being turned upside down by Plaintiff.

232. Defendants publicized the above false statements, placing Plaintiff in a false light highly offensive to Plaintiff and to any reasonable person.

29

233. Defendants acted with knowledge of the falsity and/or with reckless disregard as to the falsity of the publicized social media posts and videos and the false light in which Plaintiffs would be placed.

234. The false light created by Defendant's ongoing social media posts and videos has resulted in irreparable harm to the Plaintiff, including its standing with its drivers, with prospective drivers and in the trucking community.

235. Plaintiff would show to the Court that the actions of Defendants are intentionally designed to entice drivers away from driving for Plaintiff and instead driving for another carrier for the financial gain for Defendants.

236. Plaintiff would show to the Court that the actions of Defendants have caused and continue to cause Plaintiff financial harm and are ongoing in nature, including Plaintiff's net loss of drivers, Plaintiff's difficulty hiring new drivers, Plaintiff's loss of linehaul revenues, Plaintiff's loss of lease revenues and Plaintiff's reputational damage since Defendants began the social media attacks against Plaintiff in approximately September 2025.

237. The actions of Defendants, both past and present, are having a chilling effect on Plaintiff's ability to hire and/or retain drivers. This continues to cause Plaintiff financial hardship and is an ongoing threat to Plaintiff's daily operations.

238. As a result of Defendants committing the tort of false light, Plaintiff is entitled to a permanent injunction, compensatory damages, punitive damages and Declaratory Judgment that Defendants shall be prohibited from using any website or social media platform to post any future posts or videos which place Plaintiff in a false light.

## COUNT IV – INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

239.    Plaintiff incorporates by reference verbatim all proceeding paragraphs in support of this Count.

240.    Plaintiff would show to the Court that the intentional actions of the Defendant are a deliberate effort to intentionally interfere with business relationships being formed by the Plaintiff with their drivers being recruited.

241.    Defendants have accused Plaintiff of engaging in criminal activities and violation of federal law.

242.    Defendants have accused Plaintiff of encouraging its drivers to engage in criminal activities and violation of federal law.

243.    Defendants have accused Plaintiff of skimming off the top from its drivers and attempting to hide the real rates from its drivers.

244.    Defendants  have claimed on social media that there is "THE HURRICANE TRAP."

245.    Defendants have accused Plaintiff on social media of improperly settling with its drivers.

246. Defendants have accused Plaintiff on social media of improperly manipulating driver statements.

247. Defendants have accused Plaintiff of promoting and pressuring drivers into fake lease-purchase ownership to drivers.

248. Defendants have accused Plaintiff on social media of providing missing rate confirmations to its drivers.

249. Defendants have accused Plaintiff on social media of engaging in "fuel surcharge games" with its drivers.

250. Defendants have accused Plaintiff on social media of disguising long-term leases as rentals.

251. Defendants have accused Plaintiff on social media of improperly having drivers pay hundreds of thousands for trucks they'll never own.

252. Defendants have accused Plaintiff on social media of using Oklahoma law to trap drivers legally.

253. Defendants have accused Plaintiff on social media of being untruthful with and lying to its drivers.

254. Defendants have called Plaintiff's lease programs a trap for drivers.

255. Defendants have accused Plaintiff on social media of taking improper settlement deductions from its drivers.

32

256. Defendants have accused Plaintiff on social media of applying company pressure to its drivers.

257. Defendants have accused Plaintiff on social media of leaving a driver "broke" as a result of "[c]heap freight, adjusted rates and pennies for pay…."

258. Defendants have accused Plaintiff on social media of improperly threatening one of its drivers "with abandonment."

259. Defendants have accused Plaintiff on social media of "wage theft".

260. Defendants have accused Plaintiff on social media of not being honest with its drivers regarding driver settlement statements.

261. Defendants have alleged on social media that Plaintiff was one of 7 trucking companies whose practices result in truck drivers "being robbed …" In a subsequent social media post, Defendants state that this Facebook post accusing Plaintiff of robbing truck drivers had 130,000 impressions, 14,500 views and 880 watch hours.

262. Defendants have accused Plaintiff in social media of making false promises to prospective drivers.

263. Defendants have accused Plaintiff on social media of driver misclassification.

264. Defendants on social media have accused Plaintiff of abusing its drivers.

265. Defendants have accused Plaintiff on social media of "lying to drivers" about lease programs.

33

266. Defendants have stated on social media that it does not offer leases because Big Rig Nation are not "crooks".

267. Defendants have accused Plaintiff on social media of providing missing rate confirmations to drivers.

268. Defendants have accused Plaintiff on social media of having lease programs designed to be a trap for its drivers.

269. Defendants have accused Plaintiff on social media of having drivers pay hundreds of thousands for trucks the drivers will never own.

270. Defendants have accused Plaintiff on social media of engaging in "legalized theft" with its drivers.

271. Defendants have accused Plaintiff on social media of leaving a driver broke as a result of cheap freight, adjusted rates and pennies for pay.

272. Defendants on social media have accused Plaintiff of making broken promises to Plaintiff's drivers, of its drivers having missing pay because of Plaintiff, and Plaintiff's drivers being turned upside down by Plaintiff.

273. Plaintiff would show to the Court that the actions of the Defendants are intentional and designed to entice drivers away from Hurricane Express for the Defendant's monetary gain.

274. Plaintiff would show that Defendants employed improper means in intentionally interfering with Plaintiff's business relationships by committing the tort of defamation.

34

275.    Plaintiff would show that Defendants employed improper means in intentionally interfering with Plaintiff's business relationships by committing the tort of false light.

276.    Plaintiff would show that Defendants employed improper means in intentionally interfering with Plaintiff's business relationships by committing the tort of intentional misrepresentation.

277.    Plaintiff would show that Defendants employed improper means in intentionally interfering with Plaintiff's business relationships by committing the tort of common law disparagement.

278.    Plaintiff would show that Defendants employed improper means in intentionally interfering with Plaintiff's business relationships by committing the tort of unfair competition.

279.    Plaintiff would show that Defendants employed improper means in intentionally interfering with Plaintiff's business relationships by violating Tennessee Code Annotated § 47-18-101 *et al*, the Tennessee Consumer Protection Act.

280.    The Plaintiff would show to the Court that the actions of the Defendant have caused Plaintiff financial and reputational harm and are on-going in nature, including Plaintiff's net loss of drivers, Plaintiff's difficulty hiring new drivers, Plaintiff's loss of linehaul revenues, Plaintiff's loss of lease revenues and Plaintiff's reputational damage since Defendants began the social media attacks against Plaintiff in approximately September 2025.

281. Plaintiff would show that due to the deliberate and on-going actions of the Defendants, Plaintiff is suffering reputational and financial damages on a regular basis and continues to suffer same because of the conduct of Defendants.

282. The actions of Defendants, both past and present, and having a chilling effect on the ability to hire drivers. This continues to cause Plaintiff financial and reputational hardship and is an ongoing threat to daily operations.

283. As a result of Defendants' intentional interference with Plaintiff's business relationships with its drivers and with prospective drivers, Plaintiff is entitled to a permanent injunction, compensatory damages, punitive damages and Declaratory Judgment that Defendants shall be prohibited from using any website or social media platform to post any future defamatory or disparaging posts or videos regarding Plaintiff.

## COUNT V – INTENTIONAL MISREPRESENTATION

284. Plaintiff incorporates by reference verbatim all preceding paragraphs in support of this Count of this Amended Complaint.

285. Defendants have repeatedly made factual representations regarding the location and origin of Big Rig Nation.

286. Defendant Big Rig Nation also maintains a LinkedIn page which identifies Big Rig Nation as a "Staffing and Recruiting" company located in Nashville, Tennessee.

287. On Defendant's Big Rig Nation's Facebook page, Big Rig Nation has posted that it "is in Nashville, Tennessee".

36

288.    On Defendant's Big Rig Nation's Facebook page, as of the filing of this Amended Complaint, the only "check-ins" made by Defendants are in Nashville, Tennessee.

289.    On Defendant's Big Rig Nation's Facebook page ("Big Rig Nation"), Defendant Big Rig Nation provides drivers with a Nashville, Tennessee phone number (629-206-6609).

290.    On Defendant's Big Rig Nation's Facebook page ("Big Rig Nation"), Big Rig Nation only provides check-ins from Nashville, Tennessee.

291.    On the "Contact Us" page of Defendant Big Rig Nation's website, Big Rig Nation provides a Nashville, Tennessee phone number (629-220-6609) as well as office hours from 9:00 a.m. to 6:00 p.m. Central Standard Time.

292.    On the "Information" page of Defendant Big Rig Nation's website, Defendant Big Rig Nation indicates that drivers should contact either "Rita or Patrick" at "629-206-6609 USA".

293.    A Google search for the name "Big Rig Nation" identifies Big Rig Nation as having "truck driving jobs/Big Rig Nation/Nashville, TN".

294.    A Google search of "Big Rig Nation" shows that the "contact us" identified is "Patrick Nicholson, Founder of Big Rig Nation, Address: Nashville …"

295.    On its website, Big Rig Nation provides prospective drivers with a Nashville, TN telephone number (629-206-6609).

296.    On its website, Big Rig Nation, under "Messaging Policy" states that if drivers wanted to receive text messages, they should "text START to this phone number 629-229-2042" a Nashville, TN phone number.

297. Defendants claim on its website and social media platforms that Big Rig Nation is located in Nashville, Tennessee.

298. Defendants provide Nashville, Tennessee phone numbers to be contacted.

299. As of the filing of this Amended Complaint, Defendant Big Rig Nation claims to have hired 1189 drivers.

300. Defendants have repeatedly identified the location of Big Rig Nation as being in Nashville, Tennessee, including providing Nashville, Tennessee phone numbers.

301. Defendants' representations regarding the location of Big Rig Nation is material to the interstate commerce tucking business and the hiring of truck drivers to drive those routes

302. Defendants falsely and knowingly represented that Defendants were located in Nashville, Tennessee.

303. Defendant Patrick Nicholson has issued the sworn "Declaration of Patrick Nicholson" pursuant to 28 U.S.C. §1746 on March 16, 2026 that (1) Big Rig Nation is not incorporated in the United States, (2) Big Rig Nation is not registered to do business in the United States, including Tennessee, and (3) Big Rig Nation does not maintain a physical business location in Tennessee.

304. Plaintiff, in addition to the thousands of followers of Big Rig Nation's social media platforms, reasonably relied on Defendants' website, social media posts, and Nashville telephone numbers that Defendants were located in Nashville, Tennessee. As such, Plaintiff initially

38

identified Defendants in the original Complaint as residing in Nashville, Tennessee based upon those misrepresentations.

305. Plaintiff has suffered damage as a result of Defendants' misrepresentations to drivers and prospective drivers of being a trucking hiring company located in Nashville, Tennessee, as opposed to being an internet-only company out of Lithuania according to the "Declaration of Patrick Nicholson" (ECF Doc. No. 9-1), including Plaintiff's net loss of drivers, Plaintiff's loss of linehaul revenues and Plaintiff's loss of lease revenues since Defendants began the social media attacks against Plaintiff in approximately September 2025.

306. Plaintiff would show that the intentional misrepresentations made by Defendants repeatedly on Defendants' website and on multiple social media platforms intentionally misrepresented to drivers and/or potential drivers that Defendants were physically located and available in the State of Tennessee (as opposed to being an internet-only company out of Lithuania) with the intentional purpose of making it likely that prospective drivers and/or Plaintiff's drivers would switch from driving for Plaintiff to driving for other carriers selected by and vetted by Defendants who advertise as being a company supposedly located in Nashville, Tennessee.

307. Plaintiff has suffered an ascertainable loss of money as a result of Defendants' intentional misrepresentations as described above.

308. Plaintiff would show to the Court that the intentional misrepresentations of Defendants have caused Plaintiff financial harm and are ongoing in nature.

39

309. As a result of Defendants' intentional interference with Plaintiff's business relationships with its drivers and with prospective drivers, Plaintiff is entitled to a permanent injunction, compensatory damages, punitive damages and Declaratory Judgment that Defendants shall be prohibited from using any website or social media platform to post any future defamatory or disparaging posts or videos regarding Plaintiff.

## COUNT VI – COMMON LAW DISPARAGEMENT

310. Plaintiff incorporates by reference verbatim all preceding paragraphs in support of Count VI of the Amended Complaint.

311. Defendants have published on social media platforms false statements about Plaintiff's trucking business that have been and are harmful to Plaintiff's business and reputational interests.

312. Defendants have accused Plaintiff of engaging in criminal activities.

313. Defendants have accused Plaintiff of encouraging its drivers to engage in criminal activities and violation of federal law.

314. Defendants have accused Plaintiff of skimming off the top from its drivers and attempting to hide the real rates from its drivers.

315. Defendants have claimed on social media that there is "THE HURRICANE TRAP."

316. Defendants have accused Plaintiff on social media of improperly settling with its drivers.

40

317. Defendants have accused Plaintiff on social media of improperly manipulating driver statements.

318. Defendants have accused Plaintiff of promoting and pressuring drivers into fake lease-purchase ownership to drivers.

319. Defendants have accused Plaintiff on social media of providing missing rate confirmations to its drivers.

320. Defendants have accused Plaintiff on social media of engaging in "fuel surcharge games" with its drivers.

321. Defendants have accused Plaintiff on social media of disguising long-term leases as rentals.

322. Defendants have accused Plaintiff on social media of improperly having drivers pay hundreds of thousands for trucks they'll never own.

323. Defendants have accused Plaintiff on social media of using Oklahoma law to trap drivers legally.

324. Defendants have accused Plaintiff on social media of being untruthful with and lying to its drivers.

325. Defendants have called Plaintiff's lease programs a trap for drivers.

326. Defendants have accused Plaintiff on social media of taking improper settlement deductions from its drivers.

327. Defendants have accused Plaintiff on social media of applying company pressure to its drivers.

328. Defendants have accused Plaintiff on social media of leaving a driver "broke" as a result of "[c]heap freight, adjusted rates and pennies for pay…."

41

329. Defendants have accused Plaintiff on social media of improperly threatening one of its drivers "with abandonment."

330. Defendants have accused Plaintiff on social media of "wage theft".

331. Defendants have accused Plaintiff on social media of not being honest with its drivers regarding driver settlement statements.

332. Defendants have alleged on social media that Plaintiff was one of 7 trucking companies whose practices result in truck drivers "being robbed …" In a subsequent social media post, Defendants state that this Facebook post accusing Plaintiff of robbing truck drivers had 130,000 impressions, 14,500 views and 880 watch hours.

333. Defendants have accused Plaintiff in social media of making false promises to prospective drivers.

334. Defendants have accused Plaintiff on social media of driver misclassification.

335. Defendants on social media have accused Plaintiff of abusing its drivers.

336. Defendants have accused Plaintiff on social media of "lying to drivers" about lease programs.

337. Defendants have stated on social media that it does not offer leases because Big Rig Nation are not "crooks".

338. Defendants have accused Plaintiff on social media of providing missing rate confirmations to drivers.

339. Defendants have accused Plaintiff on social media of having lease programs designed to be a trap for its drivers.

340. Defendants have accused Plaintiff on social media of having drivers pay hundreds of thousands for trucks the drivers will never own.

42

341. Defendants have accused Plaintiff on social media of engaging in "legalized theft" with its drivers.

342. Defendants have accused Plaintiff on social media of leaving a driver broke as a result of cheap freight, adjusted rates and pennies for pay.

343. Defendants on social media have accused Plaintiff of making broken promises to Plaintiff's drivers, of its drivers having missing pay because of Plaintiff, and Plaintiff's drivers being turned upside down by Plaintiff.

344. Defendants intended for the publication on social media platforms to result in harm to Plaintiff's interests, particularly the hiring of new drivers, which has resulted in pecuniary loss to Plaintiff based upon Plaintiff's net loss of drivers, Plaintiff's loss of linehaul revenues and Plaintiff's loss of lease revenues since Defendants began the social media attacks against Plaintiff in approximately September 2025.

345. Defendants knew that the statements made on social media were false, or, at minimum, Defendants acted in reckless disregard of the truth or falsity of Defendants' social media posts and videos about Plaintiff.

346. Among the allegations made by Defendants on social media, Defendants have recklessly accused Plaintiff of engaging in criminal activity, violating Federal law, and encouraging Plaintiff's drivers to commit criminal acts and violate Federal law without any support or basis or evidence of any criminal investigation or prosecution of Plaintiff.

347. Plaintiff has suffered an ascertainable loss of money as a result of the Defendants' common law disparagement of Plaintiff, including Plaintiff's net loss of drivers, Plaintiff's difficulty hiring new drivers, Plaintiff's loss of linehaul revenues, Plaintiff's loss of lease revenues

43

and Plaintiff's reputational damage since Defendants began the social media attacks against Plaintiff in approximately September 2025.

348. As a result of Defendants' common law disparagement of Plaintiff, Plaintiff is entitled to a permanent injunction, compensatory damages, punitive damages and Declaratory Judgment that Defendants shall be prohibited from using any website or social media platform to post any future defamatory or disparaging posts or videos regarding Plaintiff.

## <u>COUNT VII – UNFAIR COMPETITION</u>

349. Plaintiff incorporates by reference verbatim all preceding paragraphs in support of Count VII of the Amended Complaint.

350. As addressed above in Counts I through VI, Defendants through their intentional social media posts and videos and intentionally misleading website have committed the torts of defamation, violation of the Tennessee Consumer Protection Act, false light, intentional interference with business relationships, intentional misrepresentation and common law disparagement.

351. Defendants' intentional and tortious actions in the social media and website posts, videos and statements has deprived Plaintiff of prospective drivers and deprived Plaintiff of customers due to missed and unfilled hauls.

352. Asa result of Defendants' tortious actions described herein, Plaintiff has suffered an ascertainable loss of money, including Plaintiff's net loss of drivers, Plaintiff's difficulty hiring new drivers, Plaintiff's loss of linehaul revenues, Plaintiff's loss of lease revenues and Plaintiff's

44

reputational damage since Defendants began the social media attacks against Plaintiff in approximately September 2025.

353. As a result of Defendants' unfair competition practices, Plaintiff is entitled to a permanent injunction, compensatory damages, punitive damages and Declaratory Judgment that Defendants shall be prohibited from using any website or social media platform to post any future defamatory or disparaging posts or videos regarding Plaintiff.

## COUNT VIII – DECLARATORY JUDGMENT UNDER T.C.A. §47-18-109(b)

354. Plaintiff incorporates by reference verbatim all preceding paragraphs in support of Count VIII of the Amended Complaint.

355. Tennessee Code Annotated §47-18-109 – **Private Right of Action – Damages – Notice to Attorney General** allowed a private party to obtain a declaratory judgment that the Defendants' acts or practices violated the Tennessee Consumer Protection Act.

356. Plaintiff seeks a Declaratory Judgment enjoining Defendants from continuing to violate the Tennessee Consumer Protection Act as detailed in Count II of the Amended Complaint.

357. Plaintiff seeks a Declaratory Judgment that Defendants be prohibited from making any further defamatory or disparaging posts or videos on any social media platform or website regarding or referencing Plaintiff.

## IX. PUNITIVE DAMAGES

358. Plaintiff incorporates by reference all preceding paragraphs in support of Plaintiff's claim for punitive damages.

45

359.    Tennessee Code Annotated §29-39-104 – **Punitive Damages** allows a plaintiff to seek punitive damages if the actions of the Defendants were done maliciously, intentionally, fraudulently or recklessly.

360.    As detailed previously in the Amended Complaint and reincorporated verbatim herein, the continuous and systematic actions of Defendants across multiple social media platforms and/or websites were done maliciously, intentionally, fraudulently and/or recklessly.

361.    As such, Plaintiff is entitled to punitive damages from Defendants consistent with Tennessee Code Annotated §29-39-104(5).

## X. DAMAGES

362.    Since Defendants began their social media campaign against Plaintiff in September 2025, Plaintiff asserts that Plaintiff has 46 less drivers working with Plaintiff than Plaintiff would have employed without Defendants' social media attacks against Plaintiff and which is expected to increase with Defendants' continuing social media attacks on Plaintiff.

363.    Those 46 missing drivers would have averaged approximately 2,100 loaded miles per week resulting in a total loss of approximately 96,600 loaded miles/per week. Based upon quantifiable, expected revenue received by Plaintiff per loaded mile driven, which was not driven due to a lack of available drivers due to Defendants' social media attacks against Plaintiff, Plaintiff has already sustained damages in excess of $1,000,000 and which continue to grow daily.

46

364.     Additionally, as a result of Defendants' social media attacks against Plaintiff, Plaintiff has suffered a quantifiable loss in lease revenues from those missing drivers not working with Plaintiff as a result of Defendants' social media attacks against Plaintiff.

365.     Based upon quantifiable lease revenues received by Plaintiff per week per driver, Plaintiff has already sustained damages from loss of lease revenues in excess of $600,000 and which continue to grow daily.

366.     Plaintiff would show to the Court that the actions of Defendants as described herein have caused and continue to cause Plaintiff significant financial and reputational damage.  At this time, Plaintiff estimates Plaintiff's damages exceed $1.6 million dollars and are continuing to increase based upon the continuing actions of Defendants described herein and the continuing impact on Plaintiff's financial and reputational status.

367.     In addition to injunctive relief, declaratory judgment, punitive damages, treble damages for willingly or knowingly violating the Tennessee Consumer Protection Act, Plaintiff presently seeks a judgment against the Defendants collectively for no less than $1,600,000,00, and potentially more to be approved at trial based upon the continuing and increasing damages being suffered by Plaintiff.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court, in the exercise of its equity powers, enter judgment in their favor and against Defendant as follows:

47

1.     Plaintiff requests an Expedited Hearing due to the continuing damages being suffered by Plaintiff;

2.     Granting a Preliminary Injunction forthwith, enjoining and restraining Defendants from publishing, broadcasting, or disseminating any further defamatory statements or false light videos, posts or other communications on any social media platform or website;

3.     Granting a Permanent Injunction upon final disposition of this matter, making the terms of the Preliminary Injunction permanent.

4.     Awarding Compensatory Damages to all Plaintiffs of between $1,600,000.00 (One Million Six Hundred Thousand Dollars) and $4,000,000.00 (Four Million Dollars) an amount sufficient to compensate for injuries to Plaintiff's reputation and business operations, or in an amount to be determined at trial.

5.     Awarding Punitive Damages for Defendant's malicious, willful, and reckless conduct consistent with Tennessee Code Annotated §29-39-104;

6.     Awarding Plaintiff treble damages for Defendants' willing and knowing violation of the Tennessee Code Annotated §47-18-109(a)(3).

7.     Awarding Plaintiff all Costs, including reasonable Attorney's Fees, as allowable under Tennessee law.

8.     Awarding Plaintiff all such other and further relief as the Court deems just and proper in law and equity.

48

Respectfully submitted,

**McNABB, BRAGORGOS, BURGESS & SORIN, PLLC**

/s/ Nicholas E. Bragorgos

NICHOLAS E. BRAGORGOS - #12000
R. SCOTT McCULLOUGH - #19499
Attorney for Hurricane Express
81 Monroe, Sixth Floor
Memphis, Tennessee 38103
Telephone: (901) 624-0640
Fax: (901) 624-0650
nbragorgos@mbbslaw.com
smccullough@mbbslaw.com

49